HAL MARCHBANKS, Plaintiff, *v.* JOSEPH K. MOORE, Defendant.

(Municipal Court of the City of New York, Borough of Manhattan, First District, December, 1920.)

Landlord and tenant — Laws of 1920, chap. 944, § 3 — reasonableness of rent question for jury — evidence — actions — lease.

Where in an action to recover rent of premises in the city of New York, leased for dwelling purposes, under an agreement by which the rent had been increased over that existing one year prior to the making of said agreement, the evidence for the landlord, tending to show even a small or fair return upon his investment, overcomes the presumption under section 3 of chapter 944 of the Laws of 1920, that the rent sought to be recovered was unjust, unreasonable and oppressive, he is neither entitled to the direction of a verdict in his favor nor to have the verdict of the jury in his favor for less than the amount claimed set aside as against the evidence or the weight of evidence. (P. 651.)

The adoption of any other course in this class of cases, would deprive tenants of the beneficent intent of the statute, and the right of having the question of the reasonableness of the rent decided as a question of fact. (P. 653.)

MOTION to set aside a verdict.

Alfred E. Ommen, for plaintiff.

Carl E. Peterson, for defendant.

MARKS, J.   For the year ending September 30, 1920, the defendant paid a rental of $137.50 per month.   In August, 1920, the plaintiff submitted to him a lease for the year commencing October 1, 1920, providing for the payment of $166.67 per month.   The defendant, on or about September twenty-fourth, and after some negotiations with plaintiff for a reduction of the rent, and before chapter 944 of the Laws of 1920 took effect, returned the lease signed by him with a note written thereon requesting that sixty-seven cents per month be deducted, and stating that that was the sum conceded by the plaintiff in the way of reducing the rent.

This action was brought to recover $166.67, the amount reserved in the lease when plaintiff had signed it and sent it to defendant for signature, but upon the trial, plaintiff conceded that he was entitled to only $166.   The plaintiff claims that the facts show that the lease was the defendant's voluntary act, free from duress or compulsion.

The jury found for the plaintiff for only $150 per month, and he moves to set aside the verdict as contrary to law and the evidence, and as against the weight of evidence.

No evidence whatever was offered by the defendant, he having rested his case at the close of plaintiff's.

The answer of the defendant substantially alleged the reasons recognized to exist for the enactment of chapter 944 of the Laws of 1920, one of the Rent and Housing Laws.   It alleges that he was told prior to signing the lease, that if he did not sign it, the plain-

tiff would forthwith lease the apartment to another tenant, and require him to vacate, that the rent of $166.67 is unjust and unreasonable, but that by reason of existing conditions under which apartments of a similar character could not be leased, and because of the great shortage of such apartments, he signed the lease on September twenty-fourth, under compulsion and to prevent his eviction. That the signing of the lease was not his free act, but was made because of plaintiff's threat, and under the stress of prevailing housing conditions. That the lease is oppressive and that any increase over $137.50 is unreasonable, unjust and unfair.

The plaintiff testified to all the facts required to be given by section 2 of chapter 944, and in great detail to many other facts affecting his net income from the property. His equity in the premises was shown to be $42,500. His income for the year ending September, 1920, was $7,650, expenditures, $5,229.50, leaving him a net income of $2,420.50 or less than six per cent.

The plaintiff, owner of the premises, occupies an apartment therein, and charging him for his apartment, at its full rental value, and increased at the same rate, that he increased the rent of other tenants, twenty-one per cent, his net income would be ten and three-quarters per cent. This percentage, he claims, is not unreasonable, upon an investment of $60,000, with an equity of $42,500, and he claims that the verdict of the jury reducing the defendant's rent from $166 to $150 per month, is based upon an unfair percentage of return, not in accordance with modern conditions, and the risk in the conduct of property; and that as the defendant offered no evidence, and it is not disputed that the signing of the lease was the tenant's voluntary act, there is nothing upon which the verdict of the jury may be upheld.

The facts show great deliberation by the tenant before executing the lease. Several weeks elapsed from the time the lease was submitted to him until he agreed to the only slight deduction made from the amount demanded by the landlord. There is strong authority to support the claim that the obligation of the contract thus made after due deliberation is impaired, and the owner deprived of his property by the verdict of the jury awarding him less than the rent agreed to be paid. Depriving him of the benefits of the lease may be said to deprive him of his property within the meaning of the constitution, but as the Legislature declared that " agreements for the payment of rent having been, and being now exacted by landlords from tenants under stress of prevailing conditions whereby the freedom of contract has been impaired," and the Rent and Housing Laws, of which chapter 944 is one, having been held to be constitutional, as a proper exercise for the public welfare of the police power of the Legislature under a public emergency recognized to exist, there is nothing left for this court to do but to permit the tenant to urge the condition of affairs recognized and declared by the Legislature to exist when the lease was made, namely, the impairment of the freedom of contract, and to permit him to avoid the lease so far as the rent to be paid is concerned.

This defense, in my opinion, may be interposed by any tenant in possession of premises, who renewed a lease, notwithstanding that the lease was executed before chapter 944 became a law, so long as it appears that it was executed at a time when the same conditions are known to have existed, and of which the court may take notice, as having been recognized and declared by the Legislature to exist, namely, when agreements for the payment of rent were " exacted by landlords from tenants under stress of prevailing condi-

tions whereby the freedom of contract has been impaired and congested housing conditions resulting therefrom have seriously affected and endangered the public welfare, health and morals in certain cities of the state." Laws of 1920, chap. 944, § 1. The section does not prescribe that the act shall apply only to leases made after the act shall take effect, but that the defense that the rent is unjust and unreasonable and the agreement oppressive, applies to an action for rent *accruing* under *an* (which may be construed *any*) agreement for premises in a city of the first class.

If chapter 944 and the verdict of the jury are in diminution of the rights of the landlord, and the contractual obligation of the tenant to pay the rent provided for in the lease, such obligation is subject to the fair exercise by the State of its police power to make such laws deemed necessary for the health, safety, comfort and general welfare of the entire community. Such is the effect of the decisions of the courts thus far rendered, sustaining the constitutionality of these laws.

Looking to see what was intended by section 3 of the act that where the rent has been increased over the rent as it existed one year prior to the time of the agreement under which the rent is sought to be recovered, such agreement shall be presumptively unjust, unreasonable and oppressive, a reasonable construction of that section leads me to the conclusion that the landlord when he has overcome that presumption by evidence showing even a small or fair return upon his investment, and no evidence is offered by the tenant to contradict the case presented by the landlord, the latter is not entitled to the direction of a verdict in his favor, nor to have the verdict of the jury set aside as against the evidence and the weight of evidence.

The effect of the verdict of the jury was to declare

the lease unjust and unreasonable and oppressive. The action was one for the recovery of rent under the lease, and the court submitted to the jury the question whether the rent was unjust, unreasonable and oppressive, and requested them to find if they determined it was, what was fair and reasonable. Chap. 944, § 4.

What is and what is not a fair income, which is one of the elements entering into the finding whether or not rent is unjust and unreasonable, depends upon the facts and circumstances of each case.

Ten or eleven per cent net income upon an investment in real estate is not an unreasonable percentage of return, but this cannot be said to be so, as a matter of law under the conditions prevailing and stayed by the legislature when chapter 944 was enacted, nor is the net income the only element to be considered in determining the question of the reasonableness of rent under this statute. There can be no hard and fast or arbitrary rule to guide the court or jury in fixing what is a reasonable or unreasonable rent or return upon an investment. Very few houses are alike so far as all the elements are concerned; that must be considered in arriving at a proper determination of the question. Cost, location, size of rooms, manner and expense of maintenance, mortgages, repairs, assessed value, taxes, value of equity, etc., vary in each case. Some owners are liberal in making repairs, others stingy. Some look after the comfort and welfare of their tenants, while others are indifferent and require the pressure of the public authorities to put rooms in habitable condition. This is also an element to be taken into account.

The uncontradicted testimony of the landlord upon all of these questions and showing as a result a fair net return, even where no evidence is offered by the tenant, still presents a question of fact as to the credi-

bility of the testimony tending to overcome the presumption of unreasonableness, unfairness and oppressiveness, declared by the statute to exist in every case where the rent has been increased over that of the year preceding.

It is difficult for a tenant to dispute the facts and figures given by the landlord or to successfully attack a single item of expense. Generally, if a tenant offers any evidence, it is only to contradict the extent of repairs or the furnishing of sufficient heat or hot water, which is all that is within his knowledge.

The difficulty, if not impossibility, on the part of the tenant of presenting any evidence to dispute the facts or the main questions that enter into the determination of the question of the reasonableness of the rent, and having in view all that was intended to be accomplished by the Rent and Housing Laws, and that the jury was not bound to blindly adopt all of the plaintiff's statements, for the simple reason that no other witness denied them, and had the right in determining the credibility of the plaintiff's testimony, to consider his interest, even if a want of truthfulness could not in a legal sense be imputed to him, leads me to the conclusion that the case was one properly submitted to the jury, without any evidence on the part of the defendant. To adopt any other course in this class of cases would deprive tenants of the beneficent intent of the statute, and the right of having the question of the reasonableness of the rent decided as a question of fact.

As the verdict is not manifestly unjust or inadequate, the motion to set it aside is denied.

Motion denied.